[Cite as *State v. Howard*, 2018-Ohio-1575.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-083** |
| EVERETT D. HOWARD, SR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas.
Case No. 2016 CR 000502.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor; *Teri R. Daniel*, and *Paul Kaplan*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Brian A. Smith*, 755 White Pond Drive, Suite 403, Akron, OH 44320 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1} Appellant, Everett D. Howard, Sr., appeals from the May 31, 2017 judgment entry of sentence of the Lake County Court of Common Pleas. For the following reasons, the trial court's judgment is affirmed.

{¶2} On November 7, 2016, appellant was indicted by the Lake County Grand Jury on the following charges: two counts of Trafficking in Cocaine, fifth-degree felonies, in violation of R.C. 2925.03(A)(1) (Count 1 & Count 3) and one count of Trafficking in

Cocaine, a fourth-degree felony, in violation of R.C. 2925.03(A)(1) (Count 2). Each charge included a forfeiture specification pursuant to R.C. 2941.1417 & R.C. 2981.04. The charges stemmed from three separate incidents of controlled buys of cocaine that took place on November 17, November 19, and December 9, 2015.

{¶3} The matter proceeded to a jury trial, at which the following testimony was presented.

{¶4} Sergeant Brad Kemp of the Lake County Narcotics Agency testified that on November 3, 2015, officers executed a search warrant at the home of a suspected drug dealer. Sgt. Kemp testified there were several different types of drugs and drug paraphernalia in the home. After confronting the occupant of the home, they recruited him to serve as a confidential informant ("CI"). Sgt. Kemp testified he told the CI that to get a positive recommendation on his charges, he would have to make controlled buys for the authorities. The CI provided the authorities with the names of several suppliers, including an individual who went by the street name of "Little." Sgt. Kemp indicated no charges were filed against the CI, but the CI would be prosecuted if he did not produce for the authorities. Thereafter, the CI participated in several controlled buys from appellant.

{¶5} The CI testified about his prior criminal history, dating back to 1996 when he was 19 years old. He explained that in 2015, he was selling drugs to support his own heroin addiction. He recalled the events of November 3, 2015, when officers searched his home. He further testified he has been clean for over a year, goes to work every day, and takes care of his son.

{¶6} During the search of his home, the CI was cooperative with officers and told them the location of the drugs. The CI indicated he was facing several potential felonies

2

based on the amount of drugs found, but he was never arrested in connection with the search, and no charges had been filed at the time of trial. He testified Sgt. Kemp approached him about making buys of narcotics in exchange for a good recommendation regarding the potential charges. The CI understood he would be expected to testify at trial, and his potential charges would remain unresolved until he had testified against all the people with whom he did controlled buys. He explained this was his first time testifying and indicated it was important for him to produce for the authorities.

{¶7} The CI testified he provided the authorities with approximately 5 to 10 names of suppliers he knew or thought he could buy drugs from under controlled circumstances. Toward the end of the interview, he submitted a person he knew by the street name of "Little," who he thought would sell him cocaine. The CI did not know "Little's" actual name but had seen him a few times at a friend's house.

{¶8} On November 17, 2015, the CI met with agents to conduct a series of controlled buys for various individuals, including "Little." Prior to the buy with "Little," Special Agent 89 showed him a picture of an individual who the CI identified as "Little." In court, the CI identified appellant as the man in the picture.

{¶9} The CI contacted a third party to set up the November 17, 2015 buy with "Little." In preparation for the buy, the CI was searched by agents and given $50, a recording device, a body wire, and a video recorder. The CI picked up the third party and went to meet "Little" at a shopping center. The third party's phone battery died, and he used the CI's phone to call "Little" to let him know they were in the parking lot. The CI gave the money to the third party, who met "Little" behind the car to make the purchase. The CI did not turn around but looked in his sideview and rearview mirrors. He saw "Little" walk up to the back of his vehicle. "Little" was wearing a gray top with bright orange

3

stripes. When the third party got back in the car, he had crack cocaine. After the buy, the CI met with agents, turned over the drugs, and filled out a report.

{¶10} The CI testified he contacted "Little" himself to organize a second buy. The second buy took place on November 19, 2015, at an apartment complex. The CI was equipped with recording devices and $60 from the authorities. After the buy, the CI turned over the purchased drugs to the authorities.

{¶11} After the second buy, "Little" changed his phone number; the CI had to go through the third party to contact "Little" to set up a third buy. The third buy took place on December 9, 2015. The CI met with authorities to go through the same process as the first two buys. After the time and location for the buy was established, "Little" contacted the CI and the third party to inform them he was unable to meet at that agreed upon time. While they were waiting to meet "Little" at a later time, the CI drove the third party to buy heroin. They also went to the third party's house to pick up a scale because "Little" needed to weigh out the drugs. They met "Little" at another apartment complex. "Little" came out to the car to get the scale and went back inside the apartment building, while the CI and the third party waited in the car. "Little" returned to the car with cocaine and exchanged it for $100 in cash. Thereafter, the CI went to meet with agents.

{¶12} The prosecutor played a video of each of the three buys for the jury. The CI described the events of each video and identified "Little" in the videos. The prosecutor also presented the CI with picture stills from the videos. The CI identified the individual in those pictures as "Little." The CI then identified appellant as the individual he knew as "Little."

4

{¶13} On cross-examination, defense counsel questioned the CI about his motives for working with the authorities. Defense counsel also questioned him about the videos depicting the buys with "Little."

{¶14} Special Agent 89 ("SA 89") testified that after the CI provided authorities with the name "Little," he contacted Lieutenant Toby Burgett from the Painesville Police Department in an attempt to learn "Little's" real name. Lt. Burgett gave him the name of Everett D. Howard, Sr., an individual he knew went by the street name "Little." SA 89 then searched the name Lt. Burgett gave him on the Ohio Law Enforcement Gateway ("OLEG") and found a picture he could use to determine whether Everett D. Howard, Sr. was the same "Little" the CI knew. The CI identified the man in the photo as the person the CI knew as "Little."

{¶15} SA 89 further testified he worked with the CI on the controlled buys; he and another agent followed the CI during the first buy. SA 89 testified they parked approximately 75 yards away from the CI's car when the first buy took place, which was around 8:30 p.m. when it was dark outside. SA 89 testified he saw the third party get out of the car twice. The second time he went to the back of the car where he met a black male. SA 89 described the man as "about 5' 7", about a hundred and sixty, hundred and seventy pounds, I'd say. Built. Clean cut. Gray sweatshirt." He testified he was confident the person he saw was the same person whose picture he pulled from OLEG. He further testified to a previous interaction he had with "Little" during an undercover buy, which also helped him identify "Little" during the first controlled buy.

{¶16} SA 89 testified that for the second buy he only saw the CI walk into the apartment building where the buy took place. Regarding the third buy, SA 89 testified he observed "Little" on the first trip to the CI's car to retrieve the scale and then walk back to

5

the apartment complex. SA 89 did not observe "Little" coming back to the car with the cocaine.

{¶17} After being shown stills from the videos from each of the controlled buys, SA 89 identified appellant in the photographs.

{¶18} Kimberly Gilson, a forensic analyst with the Lake County Crime Laboratory, testified that she performed a drug analysis on the evidence submitted. She also testified officers did not request a fingerprint or DNA analysis of the plastic bags that contained the alleged drugs.

{¶19} Appellant was found guilty of all charges in the indictment. The trial court sentenced him to 11 months in prison on each of Count 1 and Count 3 and 13 months in prison on Count 2, with all prison terms to be served consecutive to each other for a total prison term of 35 months.

{¶20} Appellant filed a timely notice of appeal from the trial court's sentencing entry. Appellant raises four assignments of error on appeal. We address appellant's assignments of error out of order.

{¶21} Appellant's third assignment of error states:

{¶22} "Appellant's convictions were against the manifest weight of the evidence."

{¶23} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

6

{¶24} "This court [is] not in a position to view the witnesses who testified below and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony." *State v. Long*, 127 Ohio App.3d 328, 335 (4th Dist.1998) (citations omitted). Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must "give substantial deference to the factfinder's determinations of credibility." *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶25} The jury found appellant guilty of three counts of Trafficking in Cocaine, in violation of R.C. 2925.03(A)(1). That statute provides: "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance or a controlled substance analog[.]"

{¶26} Appellant contends there were several problems with the CI's testimony. Appellant first argues the CI's credibility was at issue because his testimony was influenced by his desire to cooperate with authorities. This issue was addressed during trial. The jury heard testimony pertaining to the search of the CI's home, the type of charges he potentially faced, and the nature of his work as a confidential informant. This argument is not well taken.

{¶27} Appellant next argues it was not the CI who first identified appellant as the individual he knew as "Little," but that the identification came from Lt. Burgett of the Painesville Police Department. The record reflects that the CI brought "Little" to the attention of the authorities as a person who sold cocaine, but he did not know his real name. Lt. Burgett provided the identify of a person he knew went by the street name of

7

"Little." The agents obtained a picture of Lt. Burgett's "Little" and confirmed it was the same "Little" with whom the CI was familiar. This argument is not well taken.

{¶28} Appellant further argues there were several "evidentiary gaps" in the testimony and maintains that throughout their testimony, neither the CI or SA 89 indicated they actually saw "Little" hand anyone drugs.

{¶29} A review of the testimony reveals, however, that the purported evidentiary gaps of which appellant complains were all explained to the jury during trial. Moreover, in addition to the testimony, the record contains enough surveillance evidence for the jury to make reasonable inferences from which to draw their own conclusions.

{¶30} We must give substantial deference to the jury's determination of credibility. Based upon the record, we cannot conclude the jury lost its way or created a manifest miscarriage of justice by finding appellant guilty of the aforementioned charges.

{¶31} Appellant's third assignment of error is without merit.

{¶32} Appellant's first assignment of error states:

{¶33} "The trial court abused its discretion in refusing to permit testimony regarding the possible penalties [the CI] could face for charges stemming from the November 3, 2015 search of his home."

{¶34} On cross-examination of Sgt. Kemp, defense counsel questioned him about the drugs found in the CI's home, including the quantity of each drug and the penalties the CI could face. The following exchange took place:

> **Defense counsel:** And would 7 ½ grams rise to the level of F3?
>
> **Sgt. Kemp:** Probably.
>
> **Prosecutor:** Objection, Your Honor.
>
> **Trial court:** Sustained.

8

**Defense counsel:** Can I have a sidebar?

**Trial court:** Sure. (SIDEBAR) Okay.

\* \* \*

**Defense counsel:** Your Honor, I believe that potential penalties associated with Mr. Dalton are absolutely relevant and pertinent to this matter in assessing his credibility. He has a deal with this narcotics agency, and what's hanging over his head is very important. I want to establish that he's facing F3, F4, F5, numerous charges leading up to about 9 ½ years in prison.

\* \* \*

**Trial court:** First off, we usually don't send people to prison on F3's or F5's even F4's, we don't send a lot of these people to prison. I don't know if this guy's been to prison before. There's - - and, by the way, the cops don't send people to prison.

\* \* \*

**Trial court:** Well, these would be a Lake County case. I know the judges in Lake County. We're not gonna talk about the penalties, period. You know, you can say it's a felony and because that's what we do in this court. \* \* \*

Appellant objected to the trial court's refusal to permit testimony about the possible penalties the CI faced.

{¶35} Appellant maintains evidence of the potential penalties is relevant in explaining the motive behind the CI's testimony and is admissible under Evid.R. 608(B) to assist the jury in making a proper determination of credibility.

{¶36} Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the

9

Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, *by these rules*, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 402 (emphasis added). Pursuant to Evid.R. 608(B), specific instances of the conduct of a witness that are "clearly probative of truthfulness or untruthfulness" may be "inquired into on cross examination of the witness * * * concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." Evid.R. 608(B).

{¶37} In addressing the admissibility of evidence in this scenario, we review the trial court's decision for an abuse of discretion. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶38} Appellant fails to demonstrate how the potential penalties are "clearly probative" of the CI's character for truthfulness or untruthfulness. Further, both Sgt. Kemp and the CI were questioned about the drugs found in the home and about the CI's motivation for testifying. Moreover, as alluded to by the trial court, no charges had been filed against the CI. Therefore, any testimony about potential charges, or what sentence may have been imposed for those charges, was too speculative. The trial court did not abuse its discretion in refusing to allow Sgt. Kemp to testify about the potential penalties the CI might face after the search of his home.

{¶39} Appellant's first assignment of error is without merit.

{¶40} Appellant's second assignment of error states:

**{¶41}** "The trial court abused its discretion in refusing to permit testimony regarding punishment [the CI] received for past criminal convictions."

**{¶42}** On May 8, 2017, in response to notice from appellant of his intent to use prior convictions older than ten years to impeach the CI, the state filed a motion in limine, asking the court to prohibit appellant from offering the evidence, pursuant to Evid.R. 609. The court ultimately denied the motion, finding, pursuant to Evid.R. 609 and Evid.R. 403, that the four convictions at issue all involved dishonesty and their probative value substantially outweighed their prejudicial effect. The court permitted the inquiry of the convictions to include the date, court, and case number, but prohibited inquiry of the punishment imposed.

**{¶43}** Appellant failed to object to the trial court's prohibition of inquiry into the punishment imposed for the subject convictions. In addition, there was no proffer made as to what evidence would have been introduced regarding the sentence imposed, or how it was relevant. We, therefore, review for plain error. *See State v. Straw*, 11th Dist. Portage No. 2009-P-0039, 2015-Ohio-1059, ¶9, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) (citations omitted).

**{¶44}** Evid.R. 609 provides, in pertinent part:

> (A) For the purpose of attacking the credibility of a witness:
>
> * * *
>
> (3) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness * * * has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.
>
> * * *

11

(B) Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed * * * unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

{¶45} Pursuant to Evid.R. 403:

**(A) Exclusion Mandatory.** Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

**(B) Exclusion Discretionary.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

{¶46} "Evid.R. 609 must be read in conjunction with Evid.R. 403. Thus, the trial court does possess broad discretion under Evid.R. 609 to determine the extent to which [evidence of prior convictions] will be allowed. The trial judge must weigh all the factors in making this determination." *State v.* Wright, 48 Ohio St.3d 5, 7 (1990), citing *State v. Amburgey*, 33 Ohio St.3d 115, 117 (1987); *see also State v. Bryan*, 101 Ohio St.3d 272, ¶132.

{¶47} Appellant argues the Ohio Supreme Court, in *Amburgey*, only gave the trial court discretion to limit questioning of prior convictions on cross-examination to the extent it goes beyond asking about "the name of the crime, the time and place of conviction and the punishment imposed." *Amburgey*, *supra*, at syllabus. However, the Twelfth Appellate District has explained:

The Court in *Amburgey* merely held that due to the discretion a trial court exercises over cross-examination, it does not err when it *limits* cross-examination regarding an impeachment offense to the name of the crime, the time and place of conviction, and the punishment imposed. The Court did not hold that a trial court *must* allow cross-examination regarding these manners.

12

*State v. Russell*, 12th Dist. Butler No. CA2012-03-066, 2013-Ohio-1381, ¶39 (emphasis sic).  We agree and conclude that appellant's argument is not well taken.

**{¶48}** The trial court held hearings on the motion in limine prior to commencing the jury trial on May 8, 2017, and again prior to the close of testimony on May 9, 2017. The record reflects the trial court weighed the relevant factors.  We conclude the trial court did not commit any error, much less plain error, in its order to exclude questions on cross-examination concerning the punishment for the convictions at issue.

**{¶49}** Appellant's second assignment of error is without merit.

**{¶50}** Appellant's fourth assignment of error states:

**{¶51}** "Appellant's sentence was not supported by the record."

**{¶52}** We generally review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2), which states:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.  The appellate court's standard for review is not whether the sentencing court abused its discretion.  The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

**{¶53}** Appellate courts "'may vacate or modify any sentence that is not clearly and convincingly contrary to law'" only when the appellate court clearly and convincingly finds

13

that the record does not support the sentence. *State v. Wilson*, 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶18, quoting *State v. Price*, 8th Dist. Cuyahoga No. 104341, 2017-Ohio-533, ¶14, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶23.

{¶54} Here, appellant challenges the trial court's consideration of the seriousness and recidivism factors under R.C. 2929.12. Appellant maintains the trial court should have given more weight to certain factors that made appellant's conduct less serious.

{¶55} To ensure the sentence complies with the overriding principles of felony sentencing as stated in R.C. 2929.11, a court imposing a felony sentence is required to consider the seriousness and recidivism factors found in R.C. 2929.12. The trial court, however, "is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors [of R.C. 2929.12].'" *State v. Webb*, 11th Dist. Lake No. 2003-L-078, 2004-Ohio-4198, ¶10, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). Further, the "trial court is not required to give any particular weight or emphasis to a given set of circumstances" when considering the statutory factors. *State v. DelManzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶23.

{¶56} At appellant's sentencing hearing, defense counsel requested the court impose community control sanctions rather than a prison sentence. He informed the court that appellant is a "loving father" with four children and that he was going through a custody battle. Defense counsel further pointed out nobody was harmed as a result of appellant's offenses and that appellant had not intended to harm anyone. Counsel further stated appellant's criminal history was not "relatively lengthy."

{¶57} The state reviewed appellant's presentence investigation report ("PSI") with the court, including appellant's criminal history dating back to 2005. The state noted

14

appellant's multiple probation violations, failed attempts at drug treatment, and that selling cocaine was furthering the drug epidemic.

{¶58} The trial court stated it considered the record, oral statements, PSI, drug and alcohol psychological evaluation, and conference with appellant and defense counsel. The court stated it considered R.C. 2929.11 and R.C. 2929.12.

{¶59} The trial court's judgment entry states:

> The Court has also considered the record, oral statements, any victim impact statement, pre-sentence report, and/or drug and alcohol evaluation submitted by the Lake County Adult Probation Department of the Court of Common Pleas, as well as the principles and purposes of sentencing in R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12.

{¶60} Appellant has failed to demonstrate the trial court did not properly consider and weigh the statutory seriousness and recidivism factors.

{¶61} Appellant's fourth assignment of error is without merit.

{¶62} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

15