[Cite as *State v. Fair*, 2019-Ohio-2508.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-P-0027** |
| ROSS M. FAIR, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2017 CR 00533.

Judgment: Affirmed in part, reversed in part, and remanded.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Theresa M. Scahill,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Paul M. Grant,* 209 South Main Street, 8th Floor, Akron, OH 44308 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Ross M. Fair, appeals his conviction in the Portage County Court of Common Pleas, following a jury trial in which he was convicted of multiple counts of Rape, Sexual Battery, and Importuning and sentenced to life in prison with eligibility for parole after 38 years. For the reasons discussed herein, we affirm in part, reverse in part, and remand for resentencing.

**{¶2}** Appellant was accused of sexually abusing a 5 or 6-year-old minor, C.M., for the period May 20, 2013 through May 21, 2016, while appellant babysat him. C.M. testified at trial that appellant would ask to "borrow" him, take him into appellant's room, and ask him to put his mouth on appellant's penis. C.M. testified that on the first occasion, the encounter ended when C.M. threw up on appellant's underwear. On another occasion, appellant pulled C.M. into his bedroom closet and asked C.M. to kiss him. C.M. tried to run away but appellant kissed him on the cheek. C.M. testified that after those first two instances, appellant would ask C.M. to engage in fellatio "most days" that C.M. was being babysat at appellant's apartment, and on numerous occasions after the first instance, appellant's 4-year-old son, E.F., was also present in the room at the time the conduct occurred. C.M. testified that on each occasion appellant told him that if he "didn't tell", then appellant "wouldn't tell." C.M. denied that appellant ever threatened to hurt him or promised him anything.

**{¶3}** Appellant took the stand in his defense. He admits to having babysat C.M. until 2014 but denied the allegations of sexual abuse. Appellant posited that C.M. had made up the allegations because he did not like how he punished him, by spanking or time out, while he was being babysat. C.M. testified that appellant did spank him, with his mother's permission, and that he did not like it, though he said that happened infrequently. He stated that after he spanked C.M., he looked to make sure he did not leave a mark. He also testified that C.M. was having difficulties with "bathroom issues" and appellant would help by wiping C.M.

**{¶4}** C.M. testified that he eventually told his mother about the abuse and she stopped taking him to the appellant's house, but she told him not to tell anyone else or

2

else he would be taken away from her. For undisclosed reasons, C.M. was ultimately removed from his mother's custody on September 2, 2016. C.M. underwent counseling in October 2016, at which time he disclosed the abuse to a social worker, Kalleigh Wallace. A physical examination of C.M. revealed no evidence of sexual abuse.

{¶5} C.M. was referred to Melinda Andel, a pediatric sexual abuse nurse examiner at the Children's Advocacy Center (CAC) at University Hospitals. An interview between Nurse Andel and C.M. from October 27, 2016, was video recorded. Ms. Wallace watched the live interview via a television in another room. During the interview, C.M. disclosed that he was sexually abused at a specified apartment in Silver Meadows in Kent, which prompted the CAC to call the Kent Police.

{¶6} Detective Norman Jacobs was assigned to the investigation. He determined the appellant and Amanda Misock lived at the apartment C.M. specified. Det. Jacobs testified that he spoke with appellant over the phone and that appellant first responded as if being accused of physical abuse. When Det. Jacobs clarified that abuse was sexual in nature, appellant became defensive and stated C.M. was making up the allegations because C.M. hated him. Appellant refused to speak with Det. Jacobs further and declined to come in for further questioning.

{¶7} Appellant was ultimately charged with two counts of Rape, felonies of the first degree, in violation of R.C. 2907.02(A)(1)(b); two counts of Gross Sexual Imposition, felonies of the third degree, in violation of R.C. 2907.05(A)(4); two counts of Sexual Battery, felonies of the second degree, in violation of R.C. 2907.03(A)(5)(b); and one count of Importuning, a felony of the third degree, in violation of R.C. 2907.07(A) and (F)(2). The jury found him guilty on all counts.

{¶8}  The trial court found that the gross sexual imposition counts merged with the rape counts for purposes of sentencing.  Appellant was sentenced to life in prison with eligibility for parole after 15 years is served for each of the two counts of rape, to run consecutively to one another; even though the court merged the gross sexual imposition counts with the rape counts, it imposed 5 years for each offense of gross sexual imposition, to run concurrent to one another and with the rape sentences; 8 years for each of the two counts of sexual battery, to run concurrently to each other but consecutively to the sentences for rape; and 3 years for importuning, to run concurrently to the other sentences, for a total of a life sentence with the eligibility for parole after 38 years.

{¶9}  Appellant now appeals, assigning for our review five errors.  We do not address them in the order presented.

## I. SECOND ASSIGNMENT OF ERROR

{¶10}  Appellant's second assignment of error states:

{¶11}  The trial court erred as a matter of law in imposing separate sentences for the allied offenses in violation of the double jeopardy clause of the 5th Amendment to the U.S. Constitution and Article I, Section[] 10 of the Ohio Constitution.

{¶12}  The issue presented for review and argument states:

{¶13}  The trial court imposed separate, consecutive sentences for the rape counts and the sexual battery counts.  Did the trial court err in imposing separate, consecutive sentences when the facts of the alleged criminal conduct supported merger of the offenses and the trial court failed to properly consider statutory factors?

{¶14}  Ohio's allied offenses statute, R.C. 2941.25, states:

{¶15}  (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

4

**{¶16}** (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶17}** The Supreme Court of Ohio in *Jackson, infra,* set forth three questions a reviewing court must ask when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25: "'(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.'" *State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 3d, ¶128, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶31. "[I]mposing separate sentences for allied offenses of similar import is contrary to law and such sentences are void." *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658 ¶2.

**{¶18}** First, we note the state does not argue the merging rape counts and sexual battery counts arose from separate instances or were committed with separate motive. Thus, we focus our attention on whether the offenses were of dissimilar import. Offenses are of dissimilar import or significance when "each offense caused separate, identifiable harm." *Ruff*, *supra,* at ¶25.

**{¶19}** At sentencing, the trial court determined the sexual battery charges did not merge with rape charges because sexual battery requires the offender to be acting in loco parentis, and the violation of this additional element constituted additional harm, namely "an additional violation of trust." However, in this case, we do not find that acting in loco parentis constitutes a separate harm sufficient to determine a rape charge

5

and a sexual battery charge arising from the same occurrence are of dissimilar import. The Bill of Particulars makes no distinction between the conduct alleged for rape, gross sexual imposition, and sexual battery. It only broadly alleges the same actions for each count: "one act that consisted of multiple instances of sexual conduct * * * as part of a pattern of conduct," that occurred "sometime between May 20th, 2013 and May 21st, 2016" while defendant was acting in loco parentis. Merely acting in loco parentis is not enough, given these facts, to distinguish these charges.

{¶20} Other appellate jurisdictions agree. *See, e.g., State v. Marcum,* 12th Dist. Preble No. CA2015-04-011, 2016-Ohio-263 (trial court erred in failing to merge the rape and sexual battery charges because they were charged in the alternative, no specific instances of multiple sexual conduct, and no evidence was presented at trial to establish that the offenses were separately committed, resulted in separate identifiable harm, or were committed with separate motivation.); *State v. Nickel*, 6th Dist. Ottawa No. OT-10-004, 2011-Ohio-1550 ¶7 ("appellant's convictions for both offenses were based on a single act, committed with a single state of mind" but this alone was not enough to constitute dissimilar import).

{¶21} We find that when the only difference between the facts supporting the count of rape and the facts supporting the count of sexual battery is the existence of an in loco parentis relationship, this alone does not constitute sufficient harm to find the offenses are of dissimilar import.

{¶22} Thus, appellant's second assignment of error has merit.

{¶23} We raise a related issue sua sponte. The trial court found that the two rape counts (counts 1 and 2) merged, for purposes of sentencing, with the two gross

6

sexual imposition counts (counts 3 and 4). However, the court sentenced appellant on both the rape counts and the gross sexual imposition counts. The court found that:

**{¶24}** those [gross sexual imposition] counts will merge with the rape counts. I will sentence you to five years on each of those counts. Those are mandatory sentences, but I will order that those run concurrently and merge with the counts of rape.

**{¶25}** "[W]hen a sentencing court concludes that an offender has been found guilty of two or more offenses that are allied offenses of similar import, * * * it should permit the state to select the allied offense to proceed on for purposes of imposing sentence and it should impose sentence for only that offense. *Williams*, *supra, at* ¶2.

**{¶26}** In *Williams,* the court found the counts were allied offenses of similar import and merged for purposes of sentencing. Nevertheless, the court sentenced him to concurrent sentences on each of the three allied offenses instead of sentencing only one offense. However, on review, the Supreme Court of Ohio found that "once the sentencing court decides that the offender has been found guilty of allied offenses of similar import that are subject to merger, R.C. 2941.25 prohibits the imposition of multiple sentences. And '"[t]he imposition of concurrent sentences is not the equivalent of merging allied offenses."' *Williams*, *supra,* at ¶19, quoting *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268 ¶17. "It therefore follows that when a trial court concludes that an accused has in fact been found guilty of allied offenses of similar import, it cannot impose a separate sentence for each offense. Rather, the court has a mandatory duty to merge the allied offenses by imposing a single sentence, and the imposition of separate sentences for those offenses, even if imposed concurrently, is contrary to law because of the mandate of R.C. 2941.25(A). In the absence of a statutory remedy, those sentences are void." *Williams*, *supra*, at ¶28.

7

{¶27} Here, the court found counts 1 and 3, and 2 and 4 merged, but sentenced him on both rape counts and both gross sexual imposition counts. As this constitutes plain error pursuant to Crim.R. 52(B), we must remand this case for resentencing.

## II. FIFTH ASSIGNMENT OF ERROR

{¶28} Appellant's fifth assignment of error states:

{¶29} The trial court erred as a matter of law in denying [appellant's] Crim.R. 9 motion because the state failed to establish on the [record] sufficient evidence to support the charges levied against [appellant] in violation of the due process clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

{¶30} The issue presented for review and argument states:

{¶31} Was the evidence presented insufficient to prove the essential elements of the crime charged?

{¶32} An appellate court's role in reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether it would "convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded by constitutional amendment on other grounds in *State v. Smith,* 80 Ohio St.3d 89 (1997). It is a test of adequacy "as to whether the evidence is legally sufficient to support a verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). When reviewing the sufficiency of the evidence, we are required to view the evidence in favor of the prosecution. *Jenks, supra*, at paragraph two of the syllabus. "[T]he question is whether * * * a reasonable mind might fairly find each element of the offense beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 263 (1978).

{¶33} Crim.R. 29(A) states in pertinent part, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of

8

a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." *Id.* "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Bridgeman, supra.*

{¶34} In challenging the sufficiency of the evidence presented, appellant asserts "[t]he state failed to prove beyond a reasonable doubt all the elements of the crime charged. The evidence in the case at bar existed primarily of the interview conducted Andel of C.M. and C.M.'s testimony." We disagree.

{¶35} Appellant was convicted of two counts of rape in violation of R.C. 2907.02, which states:

> {¶36} (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: * * *(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶37} As used in these sections, "sexual conduct" is defined, in relevant part as "anal intercourse, fellatio, and cunnilingus between persons regardless of sex." R.C. 2907.01(A).

{¶38} The state presented C.M.'s testimony, in court and his recorded interview, that appellant made him engage in sexual conduct, specifically fellatio. It is undisputed that C.M. was under the age of thirteen. Thus, the state presented sufficient evidence of all of the required elements for rape.

9

{¶39} Appellant was also convicted of two counts of sexual battery in violation of R.C. 2907.03. However, as we discussed above, the sexual battery counts should have merged with the rape counts for purposes of sentencing. Thus, we do not discuss the sufficiency of the evidence for sexual battery.

{¶40} Finally, appellant was also convicted of one count of importuning in violation of R.C. 2907.07(A), which states:

{¶41} (A) No person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person.

{¶42} As used in this section, "sexual activity" is defined as either or both sexual conduct, as defined above, or sexual contact, as defined above. R.C. 2907.01(C).

{¶43} C.M. testified that appellant "asked" him to engage in fellatio. Again, it is undisputed that C.M. was under the age of thirteen. Thus, the state presented evidence of all of the required elements for Importuning.

{¶44} Appellant specifically argues the evidence was insufficient to support the second counts of each: rape, gross sexual imposition, sexual battery. Appellant asserts that the only evidence to support a second count was the testimony of the request for C.M. to kiss him. However, C.M. distinctly testified as to two specific instances of fellatio and stated it kept happening, but couldn't say with certainty how many times, estimating 14 or 15. The first time, C.M. and appellant were alone in the room and C.M. threw up on appellant's underwear. The second time appellant asked C.M. to engage in fellatio, C.M. testified that E.F. was in the room. Moreover, C.M. testified that the abuse occurred "most days" he was being babysat by appellant. Contrary to appellant's assertion, the incident of appellant pulling C.M. into the closet was not asserted as being a count of rape, gross sexual imposition, sexual battery, or importuning.

10

**{¶45}** We find the state presented sufficient evidence of each element of the crime that supported the jury's finding. Thus, appellant's fifth assignment of error is without merit.

### III. FOURTH ASSIGNMENT OF ERROR

**{¶46}** Appellant's fourth assignment of error states:

**{¶47}** Appellant's convictions are against the manifest weight of the evidence possession [sic] in violation of the due process clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

**{¶48}** The issue presented for review and argument states:

**{¶49}** Did the Court find all the essential elements of the crimes to be proven beyond a reasonable doubt and were [appellant's] convictions against the manifest weight of the evidence?

**{¶50}** When determining whether a conviction is against the manifest weight of the evidence, the appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶44 quoting *Thompkins*, *supra*. A court reviewing the manifest weight of the evidence observes the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses. *Thompkins, supra,* at 387. In evaluating the weight of the evidence, we do not view the facts in favor of either side but view them objectively to determine if the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *See Thompkins*, *supra.* We must also consider that the jury was in the best position here to judge the credibility of witnesses and the weight to be given to the

11

evidence. *State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "'The discretionary power to grant a new trial should only be exercised in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins, supra,* quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1983).

{¶51} As discussed under appellant's fifth assignment of error, the state presented evidence of each element of rape, gross sexual imposition, sexual battery, and importuning. C.M. testified appellant sexually abused him. Appellant testified that no sexual activity occurred. As there was no physical evidence and no other eyewitnesses, the jury was left to decide which party was telling the truth. Attendantly, we note "there is no requirement that testimonial evidence of sexual abuse must be corroborated by physical or other evidence." *State v. Kaufman*, 187 Ohio App.3d 50, 2010-Ohio-1536 ¶71 (7th Dist.). Indeed, Nurse Andel testified that it would be highly unlikely to find any physical evidence of abuse after a year had passed since the last instance of fellatio. Nor does the lack of eyewitnesses cast doubt on the accusations due to the secretive nature of such actions.

{¶52} There was no dispute as to appellant's identity or opportunity. C.M.'s testimony at trial was consistent with the recorded interview at the Children's Advocacy Center. Furthermore, the social worker working with C.M. stated his account of the abuse has been consistent. Appellant testified C.M.'s accusations were not true and that he was lying because C.M. did not like that appellant would sometimes punish him. C.M. said that while he did not like being spanked, it did not happen very often. Officer Cox testified that in his conversation with appellant, he asserted C.M. was out to ruin his life because he did not like that appellant punished him.

12

**{¶53}** We find the jury did not clearly lose its way in determining it believed appellant committed the offenses beyond a reasonable doubt. Thus, appellant's fourth assignment of error is without merit.

## IV. FIRST ASSIGNMENT OF ERROR

**{¶54}** Appellant's first assignment of error states:

**{¶55}** The trial court erred when it allowed testimony of other bad acts in violation of the due process clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

**{¶56}** The issue presented for review and argument states:

**{¶57}** Did the trial court, by allowing the unredacted DVD recording of C.M.'s interview to be admitted over Appellant's objection violation Appellant's due process of rights?

**{¶58}** Appellate review of admissions of evidence are reviewed under an abuse of discretion standard. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407 ¶14. "'The admission of such [other-acts] evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice.'" *Id.*, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266 ¶66. An abuse of discretion reflects the trial court's "'"failure to exercise sound, reasonable, and legal decision-making."'" (citations omitted) *State v. Howard,* 11th Dist. Lake No. 2017-L-083, 2018-Ohio-1575, ¶37. "A review under the abuse-of-discretion standard is a deferential review. It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *Morris, supra*.

{¶59} The state played and entered into evidence State's Exhibit 1, a DVD of the recorded interview that occurred between C.M. and Nurse Andel. On the day of the trial, before the video was played, appellant stipulated to the admission of the recorded interview as a whole into evidence, but objected to playing the portion of the video where C.M. says he assumed appellant was doing the same to E.F. and says he overheard Haley's mom asking why Haley's private parts were red. The state said it could not redact the video with such short notice. The court noted it had reviewed the DVD and did not believe the mention of the presence of other children necessarily implied other bad actions of appellant. The court admonished both sides to keep the witnesses from testifying as to any other allegations. After the recorded interview had been played at trial, appellant moved for a mistrial, arguing these portions of the video were not admissible. In denying the motion, the court noted that appellant had the opportunity to cross-examine C.M., and that C.M. admits he did not see appellant abuse any other child. No other children testified and no other evidence of the abuse of other children was presented.

{¶60} Further, contrary to appellant's assertion, the record does not show "numerous questions about other children" were asked. In the recorded interview, Nurse Andel questioned C.M. about the other children to determine if he has firsthand knowledge. At trial, the state asked C.M. one question about other children: whether he ever saw appellant try to touch E.F. inappropriately. This question in and of itself was not improper. C.M. responded that he hadn't seen any other inappropriate touching, but saw appellant ask E.F. to touch him inappropriately. The court immediately instructed the state to move on from that line of questioning.

14

{¶61} We do not find the trial court abused its discretion in admitting the recorded interview. Moreover, even assuming arguendo the admission of that evidence was in error, "[n]ot every error requires that a conviction be vacated or a new trial granted." *Morris, supra,* at ¶24. R.C. 2945.83 states:

{¶62} No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of: * * * (C) The admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby.

{¶63} "In determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, syllabus. "[T]he real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error. * * * Both the error's impact on the verdict and the weight of the remaining evidence must be considered on appellate review." *Morris, supra,* at ¶25.

{¶64} As we previously established, the jury's finding was not contrary to the manifest weight of the evidence. Here, the state's focus and evidence, aside from the comments of C.M. as recorded and the one sentence at trial, was about appellant's actions in regard to C.M. In the video, when C.M. is first asked about the abuse he became quiet and is hesitant to discuss it. Det. Cox testified that appellant became defensive when accused of sexual abuse and refused to speak with officers further. Appellant does not make a compelling argument for why C.M. would make up these allegations, while admitting that he would have motive to not admit to such abuse. And,

15

significantly, no other explanation was presented as to how C.M. at his age would have knowledge of such details.

**{¶65}** Any error in admitting the few statements of C.M. regarding his assumption of the abuse of other children was harmless in light of the other evidence presented at trial. Thus, appellant's first assignment of error is without merit.

## V. THIRD ASSIGNMENT OF ERROR

**{¶66}** Appellant's third assignment of error states:

**{¶67}** The trial court erred as a matter of law in imposing consecutive sentences upon Appellant in violation of the 5th Amendment to the U.S. Constitution and Article I, Section[] 10 of the Ohio Constitution.

**{¶68}** The issue presented for review and argument states:

**{¶69}** Did the trial court err when it imposed consecutive sentences without making the required findings pursuant to R.C. 2929.14 and referred to allege conduct that is not in the record.

**{¶70}** "An appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's finding under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶1, citing R.C. 2953.08(G)(2). "[A]bsent the accused's showing that there was a reasonable probability that the convictions are in fact for allied offenses of similar import committed with the same conduct and without a separate animus, 'the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.'" *Williams, supra,* at ¶25, quoting *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, ¶14. This is true even if the sentences are imposed concurrently. *See State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, ¶31.

16

{¶71} Appellant argues on appeal the imposition of consecutive sentences the court improperly relied on alleged conduct outside the record. He points to the fact that he had no substantial prior criminal record and asserts the trial court relied on "unsubstantiated beliefs that Appellant engaged in similar conduct for which he has not yet been caught." In particular, he points to the comment of the court: "However, based upon this type of crime, I don't know that he's been crime free. I don't know that and that's something that is due to the nature of these particular crimes. They are done secretly. They are done in private and many time children do not reveal, as we all know, ever."

{¶72} Reading that comment in light of the sentencing hearing as a whole, however, we do not find the court relied on other alleged conduct in sentencing appellant. This particular comment was in response to appellant when he requested the court not sentence him to life without parole, which the court did not impose. The court cited the secret nature of this type of crime to counter appellant's lack of significant criminal history. The court stated its reasons for consecutive sentences as,

> {¶73} necessary to protect the public from future crimes and to punish you. Consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and danger to the community. These offenses are part of a course of conduct. And the harm I believe is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct. * * * I am sentencing you to consecutive sentences on the rape counts for that reason, but I'm not giving you life without parole.

This is directly in line with the requirements of R.C. 2929.14(C)(4)(b).

{¶74} Thus, we do not find the court committed plain error in the imposition of consecutive sentences. Appellant's third assignment of error is without merit.

17

{¶75} For the reasons discussed herein, the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and remanded for resentencing.

THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.